# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TRINA L. BOUWHUIS,<br><br>Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br>Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>Case No. 1:13-cv-0053-BCW<br><br>Magistrate Judge Brooke Wells |

All parties have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] Plaintiff Trina L. Bouwhuis ("Plaintiff") seeks judicial review of the determination of the Social Security Administration that denied her applications for disability insurance benefits and supplemental security income.[2]

On January 8, 2014, the Court heard oral arguments on Plaintiff's claim.[3] At oral argument, Plaintiff was represented by Richard Williams and John M. Macfarlane, a third year law student.[4] The Commissioner was represented by Allan Berger.

Before oral argument, the Court carefully considered the parties' briefs, administrative record and relevant case law. Since taking the matter under advisement,[5] the Court has further considered the written briefs, counsel's arguments, relevant case law and the administrative record. For the reasons set forth herein, the Court AFFIRMS the decision of the Commissioner.

---

[1] See 28 U.S.C. § 636(c); F.R.C.P. 73; docket no. 16.
[2] See Opening Br., docket no. 26.
[3] Docket no. 34.
[4] See docket nos. 31-33.
[5] Id.

## BACKGROUND

Plaintiff was born on October 29, 1959.[6] In 2007, Plaintiff fell at work and sustained a traumatic brain injury. A majority of Plaintiff's impairments stem from this accident. According to counsel for Plaintiff, "recovery from this traumatic brain injury was not quick or painless. Ms. Bouwhuis returns [to medical care] for many follow up visits after her accident complaining of headaches, trouble sleeping and pain in her neck and back."[7] Plaintiff's x–rays reveal she has mild to moderate degenerative disc disease. In addition to her physical injuries, Plaintiff also alleges that since the fall, she has experienced mental and emotional changes for which she has sought treatment.

### A. Procedural History

In November and December of 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income.[8] In her applications for benefits, Plaintiff alleged an onset date of disability of October 17, 2007.[9] Plaintiff meets the insured status requirements through December 31, 2013.[10]

Plaintiff's claims were initially denied on April 22, 2010, and upon reconsideration on July 20, 2010.[11] On August 6, 2010, Plaintiff requested an administrative hearing.[12] A hearing before an Administrative law Judge ("ALJ") was held on October 5, 2011 in Salt Lake City, Utah.[13] On November 4, 2011, the ALJ issued a written decision denying Plaintiff's claims for benefits.[14] Plaintiff then appealed the ALJ's denial to the Social Security Appeals Council which

---

[6] Tr. at 52.
[7] Docket no. 20, Opening Br. at p. 3.
[8] Tr. at 151-161.
[9] Tr. at 23.
[10] Tr. at 25.
[11] Tr. at 23.
[12] Tr. at 108-109.
[13] Tr. at 49.
[14] Tr. at 23-40.

denied a review of the ALJ's decision on February 20, 2013.[15] Pursuant to 42 U.S.C. § 405(g), this appeal followed.

### B. The ALJ's Decision

In his written decision, the ALJ found at Step One of the required sequential evaluation process[16] that Plaintiff had not engaged in substantial gainful activity since October 17, 2007– Plaintiff's alleged onset date of disability.[17] At Step Two, the ALJ found Plaintiff had the following severe impairments: (1) Traumatic Brain Injury (TBI) with cognitive disorder and depression; (2) Degenerative Disc Disease of the Cervical Spine; and (3) Obesity.[18] At Step Three, the ALJ found through the date Plaintiff was last insured, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained in the regulations.[19] The ALJ found Plaintiff had the residual functional capacity ("RFC") to "perform the full range of sedentary to light unskilled work" except such work could not require:

- Lifting more than 8.5 pounds on more than a "less than occasional" basis;
- Lifting and carrying lighter articles weighing more than 3 to 5 pounds, on more than an "occasional" basis (where "occasional" means from very little up to 1/3 of the day);
- Standing or walking more than 6 total hours in an 8 hour work day;
- Sitting more than 6 total hour in an 8 hour work day;
  - Note: regarding standing/walking and sitting, to be as comfortable as possible, claimant requires the option to make brief postural changes every 30 to 60 minutes (the "sit/stand" option);
- Bending, twisting or squatting on more than a "less than occasional" basis;
- Stooping on more than an "occasional basis";
- Work on floor (e.g. kneeling, crawling or crouching) on more than a "less than occasional" basis;

---

[15] Tr. at 1.
[16] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step evaluation process for determining if a claimant is disabled).
[17] Tr. at 25.
[18] Tr. 25-26.
[19] Tr. at 26.

- Climbing or descending flights of stairs (but a few stair steps up and own not precluded);
- Overhead lifting or overhead reaching on more than a "less than occasional" basis;
- More than frequent Reaching, frequent Handling, and frequent Fingering;
- Working around dangerous unprotected heights, machinery or chemicals;
- Duties requiring a sense of smell;
- Work at more than a low stress level, which means:
  - a low production level (where VE classified all SGA jobs as low, average or high production),
  - working with the general public "less than occasionally,"
  - only minimal contact with supervisors and co-workers on the job, but still having the ability to respond appropriately to supervision, co-workers and typical work situations and
  - the ability to deal with only minimal changes in a routine work setting;
- Work at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks;
- Work at more than a low memory level, which means: the ability to understand, remember and carry out only "simple" work instructions (where "simple" is defined as functioning at GED levels of only- Reasoning: 3 Math: 2 Language: 2),
- the ability to remember and deal with only minimal changes in the work instructions from week to week, and
- the ability to remember and use appropriate judgment in making only simple work related decisions.[20]

At Step Four, the ALJ found Plaintiff had past relevant work as a sales person of general merchandise.[21] Based upon the testimony of the vocational expert ("VE"), the ALJ found Plaintiff is unable to perform her past relevant work because the position is of a higher skill level than Plaintiff's RFC.[22] However, the VE opined and the ALJ found that Plaintiff is capable of performing jobs as a sack repairer (sedentary, unskilled), foundation maker (sedentary, unskilled), checker (light, unskilled), and newspaper carrier (light, unskilled).[23] The ALJ further noted in his opinion that the VE testified that the number of these jobs available in the national

---

[20] Tr. at 29-30.
[21] Tr. at 38.
[22] Id.
[23] Tr. at 39.

economy would be reduced due to the additional limitations contained within the ALJ's hypothetical.[24]

Thus, as Step Five, the ALJ found "[b]ased on the testimony of the VE, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate[.]"[25]

## STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."[26] If supported by substantial evidence, the findings are conclusive and must be affirmed.[27] Substantial evidence is "more than a scintilla, but less than a preponderance."[28] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[29]

In addition, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[30] The Court "…may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[31] Lastly, "[t]he failure to apply the correct legal

---

[24] Tr. at 39.
[25] Id.
[26] Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014).
[27] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[28] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).
[29] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[30] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).
[31] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).

standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[32]

## ANALYSIS

At the outset, the Court would like to note that it agrees with a statement made by counsel for the Commissioner during oral argument. "This is a very close case." With some 1,400 pages, the Administrative Record in this particular case is rather voluminous and the record contains a great deal of conflicting evidence. Further, as indicated at oral argument, the Court was very impressed with counsels' professionalism and the presentation of their respective arguments. However, based upon the law, the Court simply cannot find a basis for remand or reversal in this case.

Plaintiff raises five issues on appeal: (1) Did the ALJ commit reversible error when he issued a decision Residual Functioning Capacity and proposed a hypothetical to the Vocational Expert that omitted limitations supported by substantial evidence? (2) Did the ALJ err in properly weighing the opinions of Ms. Bouwhuis' treating medical providers? (3) Did the ALJ err by failing to obtain adequate testimony from the Vocational Expert regarding inconsistencies between the decision Residual Functioning Capacity and the DOT descriptions of the jobs identified? (4) Did the ALJ err in improperly rejecting the lay witness opinions and statements? (5) Did the ALJ err in ignoring Ms. Bouwhuis change in age category as of October 29, 2009 and, therefore, erred in finding that Ms. Bouwhuis was not disabled under the Medical Vocational Guidelines or Grid Rules? The undersigned will address these issues in turn.

### A. RFC & Hypothetical Posed to Vocational Expert

At the administrative hearing, the ALJ asked the VE two hypotheticals. The first hypothetical contained all the limitations the ALJ ultimately included in Plaintiff's RFC in his

---

[32] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

written decision.[33]  Based upon this hypothetical, the VE testified that there were four jobs a person with those limitations could perform. These same jobs were contained in the ALJ's written opinion.  The second hypothetical the ALJ asked the VE contained the limitations Plaintiff testified to at the hearing.   To this hypothetical, the VE testified that no jobs would be available based upon Plaintiff's stated limitations.[34]

Plaintiff argues the ALJ erroneously failed to incorporate Plaintiff's need for frequent breaks, the ability to switch from task to task and work in a quiet environment into the RFC or the hypothetical to the VE at the hearing.  Plaintiff points to the findings of the State Agency Consultant, Dr. Zone[35] and the findings of vocational evaluator, Ted Deelstra.[36]  According to Plaintiff, the ALJ erred by failing to mention all of the areas in which Dr. Zone found Plaintiff had moderate limitations in his RFC.  However, Defendant argues that despite finding Plaintiff had some moderate limitations—all of which were not discussed by the ALJ, Dr. Zone ultimately concluded that Plaintiff "should be capable of at least simple SGA."[37]  Therefore, citing Atkinson v. Astrue,[38] any omission by the ALJ as to individual moderation limitations is not grounds for reversal.  The Court agrees.  In Atkinson, the Court found no error where the ALJ failed to include all of the moderate limitations found by a physician who completed a mental RFC assessment but ultimately accepted the opinion of the doctor that Plaintiff was not precluded from non-complex work.  The Court reasoned "…the fact that the ALJ did not discuss

---

[33] Tr. at 82-83.
[34] In his written opinion, the ALJ found Plaintiff not to be credible. "After careful consideration, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. at 31. Plaintiff has not challenged the ALJ's findings with regard to Plaintiff's credibility in this appeal.
[35] Tr. at 916-918.
[36] Tr. at 1387-1407.
[37] Tr. at 918.
[38] 389 Fed. App'x 804, 2010 WL 2977593 (10th Cir. Jul 29, 2010)(unpublished).

every single limitation used by Dr. Glasco to reach his ultimate opinion is not problematic."[39] Similar to Atkinson, because Dr. Zone concluded that Plaintiff is capable of returning to work, any specific omission by the ALJ as to specific findings is harmless.

Next, Plaintiff argues the ALJ erred by not including all the findings of vocational evaluator, Ted Deelstra in the RFC. Plaintiff asserts the ALJ by not accounting for the evaluator's finding that Plaintiff "would need to be able to stand or sit as needed and to take rest breaks periodically through out the work day. Excessive noise and commotion may cause mental fatigue and exacerbate anxiety, emotional distress and should be limited or avoided."[40] Despite this commentary, the evaluator recommended a number of jobs for Plaintiff.[41]

In the ALJ's opinion, this evaluation was accounted for. In fact, the ALJ specifically quoted the evaluator's findings that Plaintiff would need rest breaks, need to alternate between sitting and standing and excessive noise and commotion may cause mental fatigue.[42] The Court finds that while the ALJ's RFC may not have specifically accounted for rest breaks, there is no legal error in the ALJ's evaluation of the vocational rehabilitation evaluator's assessment. The RFC accounted for mental fatigue by limiting Plaintiff to unskilled work with a low stress level and requiring low memory. Further, as pointed out by Defendant, the RFC has Plaintiff performing at a lower level than the vocational rehabilitation assessment where she was performing semi-skilled tasks. Importantly too, Mr. Deelstra ultimately found Plaintiff to be capable of performing a number of jobs. Therefore, the Court finds the ALJ properly considered Mr. Deelstra's findings and the ALJ's failure to include every limitation identified in the RFC constitutes harmless error.

---

[39] Id. at 807-808.
[40] Tr. at 1404.
[41] Tr. at 1406-1407.
[42] Tr. at 34.

Therefore, "the ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answers to that question provided a proper basis for the ALJ's disability decision."[43]

## B. Medical Opinions

Next, Plaintiff argues the ALJ improperly rejected the opinions of Plaintiff's treating physicians, Dr. Schaelling, Dr. Chowdhury, and Dr. Harker. Plaintiff argues that the ALJ improperly rejected the opinions from Plaintiff's medical providers who each identified limitations that would preclude her from all work. According to Plaintiff, the ALJ erroneously gave great weight to assessments of physicians who had less of a treatment relationship with Plaintiff as compared to her treating physicians, Drs. Schaelling, Chowdhury and Harker. In particular, Plaintiff argues that the ALJ erred by not completing part one of the two-part test for treating physicians adopted by the 10th Circuit. Moreover, Plaintiff argues that the ALJ's reasons for affording less than controlling weight to Plaintiff's treating physicians were not legitimate or supported by substantial evidence.

In his opinion, the ALJ analyzed the opinions of Drs. Schaelling, Chowdhury and Harker as follows:

Michael Schaelling, M.D.

Doctor Schaelling submitted a Medical Report, provided by the claimant's attorney, on November 3, 2009, in which he opined the claimant could not work a full 8 hour workday due to excessive fatigue and dizziness. Doctor Schaelling was one of the claimant's doctors at Tanner Clinic from October 17, 2007. [O]n February 1, 2010, Dr. Schaelling fills out the claimant's paperwork, as the claimant reports Dr. Chowdhury will no longer see her nor will Doctor Sadiq. Therefore, Dr. Schaelling's opinion is given slight weight as he is apparently relying on Dr. Chowdhury's opinion, which is not supported by objective evidence. The opinion expressed is quite conclusory, providing very little

---

[43] Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000)(citing Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993)).

explanation of the evidence relied on in forming that opinion. Doctor Schaelling also appears to rely quite heavily on the claimant's subjective complaints.

Arif Chowdhury, M.D.

Doctor Arif Chowdhury wrote a note on October 13, 2009, in which he opined, 'at this time it is her best interest to stop working, until further notice.' There are no medical records from Dr. Chowdhury to substantiate his opinion. On June 15, 2010, Dr. Chowdhury opines to the State of Utah Labor Commission that the claimant was required to be off work 'indefinitely' after reviewing Dr. Michael [Schaelling's] Medical Report. The undersigned notes however, that it is just three weeks later on July 8, 2010 that Dr. Chowdhury reports the claimant is "doing quite well and stable. Her recent laboratory tests are also unremarkable." Dr. Chowdhury did note 'mild cognitive deficiencies.' Doctor Chowdhury's opinion of June 15, 2010 is given little weight due to his favorable observations of the claimant on July 8, 2010.

Dustin B. Harker, M.D.

The claimant was seen by Dr. Dustin B. Harker M.D. on May 25, 2011, and September 21, 2011 for medications. His physical examination of the claimant was normal but he found she had a depressed affect, not allowing him to do an accurate assessment of her cognitive impairment. He did opine, 'Severe depression would seem to be a sufficient reason for disability in this [patient].' He did note he would 'defer to their expertise' meaning psychiatry as to what medications would be best for the claimant. Therefore, the doctor's opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise. As discussed elsewhere in this decision psychologist found the possibility of malingering and that the claimant could work. His opinion is given slight weight.[44]

Under the regulations, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including…symptoms, diagnosis, and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."[45] Social Security Ruling ("SSR") 96-8p provides "[t]he RFC assessment must always consider and

[44] Tr. at 36.
[45] 20 C.F.R. § 416.927(a)(2).

address medical source opinions. If the assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[46]

In the 10th Circuit, in evaluating Plaintiff's treating physician(s), "…the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."[47] "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates."[48] "The ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence…'"[49] "If the opinion is deficient in either of these respects, it is not to be giving controlling weight."[50] However, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference[.]"[51] Thus, at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors"[52] provided in [20 C.F.R. § 404.1527].[53] "If this procedure is not followed, a remand is required."[54]

Here, there is no doubt that the ALJ did not make specific findings as to step one of the analysis. Namely, with regard to the opinions of Drs. Schaelling, Chowdhury and Harker, the ALJ did not state whether or not the opinions were entitled to "controlling weight." Plaintiff

[46] SSR 96-8p, 1996 WL 374184, at *7 (Effective July 2, 1996).
[47] Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011).
[48] Id. (citing Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)).
[49] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).
[50] Krauser, at 1330.
[51] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted).
[52] Krauser, at 1330.
[53] Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)(internal quotation omitted).
[54] Chrismon v. Colvin, 531 Fed. App'x 893, 900-901, (10th Cir. 2013)(unpublished).

asserts that this is an error based upon the plain language of 10th Circuit case law, namely Krauser v. Colvin[55] and Chrismon v. Colvin[56]. However, as Plaintiff correctly noted in Crandell v. Colvin,[57] this Court analyzed the 10th Circuits' decisions in Krauser and Chrismon and found that both Krauser and Chrismon "require that in addition to a failure to complete the "two-step analysis," "something more" must be shown in order for a case to be reversed and remanded."[58]

In Crandell, the Court analyzed the Krauser and Chrismon opinions as follows:

> In Krauser, the ALJ simply concluded that the treating physician's opinion was not given controlling weight, and "then said no more about it."[59] Thus, the 10th Circuit held "[w]e must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion."[60] Similarly, in Chrismon, the 10th Circuit reversed and remanded a decision of an ALJ where the ALJ failed to follow the sequential two-step inquiry in evaluating the opinion of claimant's treating physician and where the basis the ALJ relied upon in affording the treating physician's little weight ("absence of longitudinal records") was not supported because medical records were produced after the ALJ's decision which undermined the ALJ's reasoning.[61]

Here, Plaintiff's case is factually distinguishable from Chrismon & Krauser. First, although the ALJ did not specifically state whether or not the Plaintiff's treating physicians' opinions were entitled to "controlling weight," the ALJ went on to give them "slight" or "little" weight and provided reasons for such findings. Therefore, unlike Chrismon, absence of records is not at issue in the instant case. Moreover, unlike Krauser, because the ALJ did provide the amount of weight he was giving to each opinion, the Court was able to meaningfully review the ALJ's findings and finds no basis (absent further guidance from the 10th Circuit) for remand

---

[55] 638 F.3d 1324 (10th Cir. 2011).

[56] 531 Fed. App'x 893, 900-902 (10th Cir. 2013)(unpublished).

[57] No. 1:12-cv-227-BCW, 2013 WL 5651445 at *8-9 (D. Utah Oct. 16, 2013)(unpublished).

[58] Id. at *8. However, in a footnote to this decision, the Court noted "[f]urther clarification from the Circuit would be helpful as to whether failure to complete the "two-step" analysis is in fact all that is required for remand." Fn. 54. The Court renews its request to the 10th Circuit for further clarification on this issue.

[59] Krauser, at 1331.

[60] Id.

[61] Chrismon, at 902. ("We are left with a treating source opinion, potentially dispositive as to disability, which the ALJ rejected for a reason the administrative records cannot support.")

based solely on the Plaintiff's argument that the ALJ did not state whether each treating source opinion was entitled to controlling weight. The Court has acknowledged that it is not clear whether remand must be required if the ALJ doesn't specifically address the "controlling weight" issue, but in line with it reasoning in <u>Crandell</u>, the Court finds that "something more" has not been shown in this case.[62]

Second, the Court finds no legal error in the ALJ's decision to afford Plaintiff's treating physicians little or slight weight. As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. Moreover, ALJ is not required to discuss every factor set forth in the relevant regulations.[63] Here, the Court finds the ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.[64] Nothing more is required.

In addition, from the ALJ's opinion, it is clear that he did consider at least some of the factors contemplated by 20 C.F.R. § 404.1527. For example, the ALJ discounted the opinion of Dr. Schaelling because "he is apparently relying on Dr. Chowdhury's opinion, which is not supported by objective evidence [and] the opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" (factors 3, and 4).[65] Dr. Harker's opinion was discounted because "[h]e did note he would 'defer to their expertise' meaning psychiatry as to what medication would be best for the claimant." Therefore, the doctor's opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise." (factor 5).[66] Finally, with regard to Dr. Chowdhury, the ALJ noted that his opinion

---

[62] <u>See</u> <u>Crandell v. Colvin</u>, No. 1:12-cv-227-BCW, 2013 WL 5651445 at *8-9 (D. Utah Oct. 16, 2013)(unpublished).
[63] <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257 (10th Cir. 2007)(stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review.")
[64] <u>See</u> 20 CFR §404.1527(d)(2).
[65] <u>See</u> <u>supra</u> footnote 53.
[66] <u>Id</u>.

that Plaintiff should stop working until further notice was not supported by medical records

(factor 3)[67] and the ALJ found Dr. Chowdhury's opinion was given little weight due to his

favorable observations of claimant (factors 3, and 6).[68]

While Plaintiff may not agree with the ALJ's reasoning and may have alternative

explanations of the evidence, this is not a proper basis for remand. Plaintiff is essentially

requesting the Court to reweigh the evidence with regard to her treating physicians—something

this Court is not allowed to do.[69]

### C. Inconsistencies with RFC and DOT Descriptions of Jobs.

At the administrative hearing, after the ALJ posed hypothetical questions to the VE, he

asked the following additional questions to the VE:

> Q:    If we were to read the DOT and SCO and other publications would
>       we see all these limitations mentioned, in particular, that sit/stand
>       option?
> A:    No sir.
> Q:    And how do you resolve that apparent conflict?
> A:    My experience as a vocational rehabilitation counselor.[70]

Plaintiff argues that the ALJ erred because he worded his question in a way that makes it

unclear whether there are other limitations mentioned in the hypothetical that would not be found

in the DOT and other publications. Therefore, Plaintiff argues the ALJ failed to obtain a

reasonable explanation for apparent conflicts between the limitations in the hypothetical and the

DOT description of the jobs identified by the VE. By way of example of discrepancies, Plaintiff

highlights the lifting differences in the hypothetical that are not consistent with lifting restrictions

set forth in the DOT. Defendant on the other hand argues that the differences in lifting

requirements and the DOT are irrelevant because the ALJ and vocational expert could find her

---

[67] Id.
[68] Id.
[69] Casias v. Sec'y of Health & Human Servs., 933 F. 2d 899, 800 (10th Cir. 1991).
[70] Tr. at 86.

RFC consistent with light work, even if she could not lift anything, because the RFC the ALJ adopted was actually consistent with the walking requirements.

The Court finds Plaintiff's argument that there is an unresolved conflict between the VE's testimony and the DOT is without merit and agrees with the Defendant's arguments. "[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the extertional [and nonexertional] requirements of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation of any discrepancy on this point."[71]  A vocational expert's experience may be a reasonable explanation for a conflict between the expert's testimony and the DOT.[72]   Here, the Court finds the ALJ's question to the VE was adequately posed.  True, it is not a perfectly worded question and perhaps it is open to differing interpretations but nevertheless the ALJ did inquire about a potential conflict with the DOT.  The VE then reconciled the conflict with the DOT based upon his "experience as a vocational rehabilitation counselor."[73] The Court finds Plaintiff's arguments to amount to "form over substance" and any error committed by the ALJ is harmless.

### D.  Lay Witness Testimony

Plaintiff's mother, father, son, uncle, sister-in-law and friend provided statements regarding Plaintiff's limitations.   In his opinion, the ALJ stated that he carefully considered each of their opinions in accordance with SSR 06-03p but gave them each little weight.[74]  The ALJ discounted the statements for essentially the same reasons.  Namely, that due to the witnesses'

---

[71] Hackett v. Barnhart, 295 F.3d 1168, 1175 (10th Cir. 2005).
[72] See 00-4p, 200 WL 1898704, at *2 ("information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling").
[73] Tr. at 86.
[74] Tr. at 37-38.

relationship with Plaintiff they were partial to the success of her claims and influenced by Plaintiff's allegations related to her symptoms. Also, the witnesses are not medical professionals and the statements were contrary to the weight of the evidence.

Plaintiff argues that the ALJ's analysis of these opinions is in error. Specifically, Plaintiff cites to a case from the Ninth Circuit Court of Appeals, Smolen v. Chater.[75] In Smolen, the ALJ rejected the testimony of Plaintiff's family members for two main reasons: (1) testimony was "from 'family witnesses' who were therefore 'understandably advocates, and biased'" and (2) "medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation."[76] The Smolen court reversed and remanded the case based upon the ALJ's reasoning with regard to the lay witness statements. Specifically, the court reasoned with regard to ALJ's first reason for rejection of the statements

> …a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified. Moreover, the same could be said of any family member who testified in any case. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value.[77]

As for the ALJ's second reason for rejecting lay witness testimony in Smolen, the Court found that the ALJ's reasoning clashed with the regulations. "The rejection of the testimony of Smolen's family members because Smolen's medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records."[78]

---

[75] 80 F.3d 1273, 1289 (9th Cir. 1996).
[76] Id.
[77] Id. (internal citations omitted).
[78] Id.

As suggested at oral argument during questioning, while the Court may tend to agree with the Smolen Court that based upon the ALJ's reasoning in this case, family members will always be biased and interested in the outcome of the case. Therefore, every lay witness statement from a family member would be rejected. However, the Court notes that Smolen and its progeny is the law in the Ninth Circuit. The Tenth Circuit Court of Appeals, to which we are bound, has held that with regard to lay witness statements, an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony.[79] Therefore, unlike the decision in Smolen, in the 10th Circuit, Plaintiff's arguments are not bases for remand because the ALJ considered the lay witness testimony.

For further support of this conclusion, the Court is particularly persuaded by a recent unpublished case from the District of Kansas, Croley v. Colvin,[80] in which Plaintiff raised very similar arguments to the case at hand. In Croley, the ALJ "acknowledged a 'third party function report' completed by Plaintiff's mother…and accorded it only 'little weight' because it is a lay opinion based on observation rather than medical evidence and testing, it is based on family loyalties, and it does not outweigh the accumulated medical evidence."[81] The Plaintiff in Croley argued that the ALJ erred in weighing the lay witness testimony of Plaintiff's mother for three reasons: (1) the ruling and regulations do not require that lay testimony be given "little weight" just because it is not based objective testing; (2) Plaintiff's mother's statement is entitled to weight pursuant to SSR 06-03p and (3) discounting lay testimony because on casual observation

---

[79] Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006); Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)("We decline claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witnesses' credibility, particularly where the written decision reflects that the ALJ considered the testimony.")
[80] No. 12-1101-JWL, 2013 WL 615564 (D. Kan. Feb. 19, 2013)(unpublished).
[81] Id. at *1.

rather than medical testing is error because that reasoning would apply to all lay witness testimony and because it is impractical to expect medical testing from a lay witness.[82]

The Court in <u>Croley</u> affirmed the decision of the ALJ and found no error in the ALJ's analysis of the lay witness testimony.[83]  Upon examination of SSR and Tenth Circuit case law, the Court reasoned "…the law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends and neighbors.  The decision must reflect that the ALJ included the opinion in his consideration of disability, but need not specify the weight accorded to that opinion.  Nonetheless, he *may* do so in explaining the rationale for his decision."[84] Further, the Court recognized that Ninth Circuit case law and Tenth Circuit case law conflict in this area.[85]

Here, the ALJ specifically referred to each of the lay witnesses statements in his written opinion and stated that he considered their testimony.[86] Therefore, based on the law in the Tenth Circuit, nothing more was required and the Court finds no legal error in the ALJ's analysis of lay witness testimony.

### E.  Change in Age During Relevant Period

In his opinion, the ALJ found Plaintiff to be forty seven years old on the alleged onset date of disability.[87]  At age forty seven, under the SSR, Plaintiff is classified as (and the ALJ properly found) a "younger individual age 18-49."[88]  However, Plaintiff indicates that she turned fifty years of old during the relevant time period in this case.  Plaintiff therefore argues that the

---

[82] <u>Id</u>. at *3.
[83] <u>Id</u>. at *10.
[84] <u>Id</u>. at *6.
[85] <u>Id</u>. at *7 ("The Ninth Circuit's requirement that the ALJ must provide specific reasons for rejecting lay witness testimony is directly contrary to the Tenth Circuit's holding that  an ALJ must *consider* lay witness testimony, but need not make specific written findings regarding witness credibility.")(internal citations omitted).
[86] Tr. 37-38.
[87] Tr. at 38.
[88] <u>See</u> Tables, 20 C.F.R. Part 404 , Subpt. P, App.2, § 200.00 et al.

ALJ's failure to acknowledge Plaintiff's change in age may have significant impact and may warrant remand due to the ALJ's very limited RFC determination. Specifically, Plaintiff asserts that if Plaintiff was limited to just sedentary work and she turned fifty during the relevant time period, the Grid Rules would direct a finding of disability. Plaintiff further argues the ALJ's opinion does not state clearly enough that he contemplated the correct Grid Rules nor specifically acknowledged Plaintiff's age change during the relevant time period.

Grid rules are used as a shortcut method to evaluate whether or not a person is disabled in cases where specific findings are made that precisely coincide with the criteria set forth within the "grids."[89] Thus, under the grid rules, specific findings of fact must be made as to residual functional capacity (e.g. sedentary, light work, medium work, etc.), age (e.g. closely approaching advanced age, advanced age, retirement), education (e.g. marginal, limited, etc.) and previous work experience (e.g. skilled or unskilled).[90] Here, the ALJ found that Plaintiff could perform "the full range of sedentary to light unskilled work" with limitations.[91] In addition, the ALJ made specific reference to the Grid Rules in his opinion and their applicability to Plaintiff's case.

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity.[92]

---

[89] Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999) (stating "[w]hen a claimant's exertional level, age, education, and skill level (i.e. work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids.")(internal citations omitted).

[90] 20 C.F.R. Part 404 , Subpt. P, App.2, § 200.00 et al.

[91] See supra "Background" section; Tr. at 28.

[92] Tr. at 39.

The Regulations define "light work" as

> "invol[ving] lifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and pulling of arm or leg
> controls. To be considered capable of performing a full or wide range of light work,
> you must have the ability to do substantially all of these activities. If someone can do
> light work, we determine that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability to sit for long
> periods of time.[93]

"Sedentary work" is defined as

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools. Although a sedentary
> job is defined as one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties. Jobs are sedentary if
> walking and standing are required occasionally and other sedentary criteria are
> met.[94]

Here, the ALJ referenced grid rule 202.21, which is the grid rule that applies to a

"younger individual," with a high school education with unskilled or no previous work

experience.[95] Plaintiff acknowledged at oral argument that counsel for Plaintiff mentioned

Plaintiff's age at the administrative hearing[96] but argues the ALJ should have discussed

Plaintiff's change in age which would make her "closely approaching advanced age" (age fifty)

in his opinion. Further, Plaintiff assets Plaintiff's RFC is more limited than "light work" and if

classified as "sedentary," instead of "light," the grid rules would dictate a finding of disabled

based on Plaintiff turning fifty. Defendant on the other hand, argues that the ALJ properly

consulted a VE because he found that the Plaintiff's RFC was more limited than the full range of

light work.

---

[93] 20 C.F.R. § 404.1567, 416.967.
[94] Id.
[95] Table no. 2, 20 C.F.R. Part 404 , Subpt. P, App.2, § 200.00 et al.
[96] See Tr. at 52.

The Court notes that for a person "closely approaching advanced age," i.e. over fifty years old, with a "light work" designation, and a high school education, the grid rule dictates a finding of not disabled.[97]  If, on the other hand, Plaintiff's RFC put her in the "sedentary" category and she is "closely approaching advanced age," the grid rules would dictate a finding of "disabled."[98]

Upon review, the Court agrees that the ALJ's RFC determination contained many limitations.  However, based upon a reading of the RFC when compared to the Social Security's physical exertion requirements, the Court finds that Plaintiff's RFC falls between "light" and "sedentary work."   Although the ALJ's opinion does not reference Plaintiff's change in age, under SSR 83-12, the Court finds this not to be a basis for remand.

SSR 83-12 states in relevant part:

2.      If the exertional level falls between two rules which direct opposite conclusion, i.e. "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

c.      In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability.  Accordingly, VS[99] assistance is advisable for these types of cases.

The instant case presents the situation contemplated by SSR 83-12.  If Plaintiff is found to be closely approaching advanced age and limited to sedentary work—she would be disabled. If on the other hand, she is limited to light work and closely approaching advanced age then she is not disabled.   Thus, two rules direct an opposite conclusion.  However, even if the ALJ did err by not considering Plaintiff's change in age during the relevant time period, based on the

---

[97] See Grid Rule 202.13.
[98] Grid Rule 201.12.
[99] "…the term vocational specialist (VS) describes all vocational resource personnel."  SSR 83-12.

Plaintiff's RFC falling between the two exertional categories, SSR 83-12 dictates that a VE be consulted. That occurred in this case. In addition, the Court agrees with Defendant's argument that it is relevant that the VE found Plaintiff was capable of performing jobs in both the light and sedentary categories. Therefore, the Court finds that any error by the ALJ was harmless and finds no basis for remand as to this issue as it is based upon substantial evidence.

## CONCLUSION & ORDER

For the foregoing reasons, the Court finds Plaintiff's arguments do not warrant reversal nor remand for further proceedings. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 2 September 2014.

Brooke C. Wells
United States Magistrate Judge